JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Kerry Crawford ("appellant") appeals from his convictions of aggravated robbery and kidnapping, both with one and three-year firearm specifications. For the reasons set forth below, we affirm.
 {¶ 2} On 2001, appellant was indicted in connection with the robbery of a Speedway store on a seven count indictment charging him with aggravated robbery in violation of R.C. 2911.01; three counts of kidnapping in violation of R.C. 2905.01; two counts of felonious assault in violation of R.C. 2903.11; one count of intimidation in violation of R.C. 2921.04. All counts but the intimidation charge carried a one-year firearm specification in violation of R.C. 2941.141 and a three-year specification in violation of R.C. 2941.145.
 {¶ 3} The case proceeded to a jury trial on December 9, 2002. Prior to the start of trial, the state dismissed counts five six, and seven of the indictment. During trial, the trial court granted a Crim.R. 29 motion on count four of the indictment, the intimidation charge. The jury was unable to reach a unanimous verdict and the trial court declared a mistrial on December 13, 2002. Appellant was granted a new trial, which commenced on February 12, 2003. The jury found appellant guilty of aggravated robbery with a one-year and three-year firearm specification, as charged in count one of the indictment; guilty of kidnapping with a one-year and three-year firearm specification as charged in count two of the indictment; and not guilty of felonious assault as charged in count three of the indictment. Appellant was sentenced to a total of ten years incarceration. It is from this ruling that appellant now appeals, asserting two assignments of error for our review.
 {¶ 4} "I. The trial court erred in holding that the affidavit in support of the search warrant was valid."
 {¶ 5} In his first assignment of error, appellant asserts that the trial court erred in denying his motion to suppress the evidence on the basis that the affidavit in support of the search warrant was based solely on hearsay and thus insufficient to establish probable cause. Appellant submits that, as a result, any evidence retrieved as a result of the search should have been suppressed.
 {¶ 6} The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. Crim.R. 41(C) sets forth the standard for issuing search warrants, and provides in part:
 {¶ 7} "A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probablecause may be based upon hearsay in whole or in part, provided there is asubstantial basis for believing the source of the hearsay to be credibleand for believing that there is a factual basis for the informationfurnished." [Emphasis added.]
 {¶ 8} In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the reviewing court is to determine whether the issuing judge had a substantial basis to conclude that probable cause existed. State v.George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus, following Illinois v. Gates (1983), 462 U.S. 213, 238-239. Neither a trial court nor an appellate court should substitute its judgment for that of the issuing magistrate by conducting a de novo review. Id. In making the determination of whether there was a substantial basis to conclude that probable cause existed, the reviewing court must:
 {¶ 9} "Make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."
 {¶ 10} Id. at paragraph one of the syllabus. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should afford great deference to the issuing magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. Id.
 {¶ 11} In this case, appellant alleges that the affidavit simply stated that the cashier recognized the assailant's voice and that a bus driver admitted seeing appellant near the Speedway the night of the incident. He maintains that these facts are insufficient to establish probable cause. We reject appellant's hollow reading of the facts set forth in the affidavit and note that the affidavit in support of the search warrant stated the following relevant facts:
 {¶ 12} "1.) [Affiant detective investigating the incident] avers that on March 19, 2002, the North Olmsted Police Department contacted Kurt Nget who reported a robbery at the Speedway Gas Station * * *. Mr. Nget reported that a black male with a full black face mask, ski style, and a hooded sweatshirt, had a gun and struck him in the back of the head. In response to this, the [dispatch] sent North Olmsted Police officers * * *. [An officer] met with the victim Mr. Nget and a witness in the store named Susan Cavano. Ms. Cavano said that when she entered the store she observed a black male wearing a ski mask and all dark clothing exit the rear office area * * *. She described the male as at least 5'8" tall with a medium build. * * * Officer Morgan interviewed the victim, Mr. Nget, who stated that as he was closing the store at 22:50, he heard the door open, turned and saw a black male wearing a ski mask at the counter. The male pointed a small silver gun at him and told him to open the safe. * * * When the male found no money in the front safe, he used the gun to hit Mr. Nget in the back of the head. The male again told Mr. Nget to get the money and also whispered to him `I'm going to kill you * * *." Mr. Nget told him he would get him the money and while he was walking to the back of the store the male grabbed him by the back of the hair and threw him on the office floor. Mr. Nget opened the office safe and the male pushed him out of the way and took the $248.00 which was in the safe. * * *
 {¶ 13} "2.) * * * Affiant reinterviewed Mr. Nget and learned that he had been with the store for thirteen months and he was sure that the person who committed the crimes was a Kerry K. Crawford, who he had worked with during the previous summer at the Speedway store. He stated that he knew this because Kerry Crawford had a very distinct low voice and used the same type of language as Kerry Crawford had used, and that the suspect was the same physical height and weight as Kerry Crawford. Further, the suspect told Mr. Nget to give him the money from the safe and appeared to know where the money was. Mr. Nget also told affiant that he knows that Kerry Crawford was fired by Speedway for `credit card fraud.' Mr. Nget also stated that Kerry Crawford rides the bus and did not have a car during the summer.
 {¶ 14} "3.) Affiant avers that he also reinterviewed Susan Cavano and learned that, when she arrived at the Speedway Gas Station, there were no cars in the parking lot and that no one was outside. She first noticed a black man dressed in a black ski mask who came out of the office and told her to stay where she was. She described [the assailant] as at least 5'9" with medium build, appeared to be black, she noticed that he had a very deep voice, all black clothes * * *.
 {¶ 15} "4.) Affiant then contacted RTA and learned that driver Raul Rasad was on the night-time run for Lorain Rd. * * * Unsolicited he recalled that he dropped a male off matching that description between 8:45 and 9:00 p.m. at Lorain and David Drive, which is the closest bus stop to the Speedway Gas Station. Mr. Rasad added that the person he dropped off was a regular rider, who he recognized from the previous summer, who had always taken the 11:18 p.m. out-bound bus during the weekdays. Subsequent to this interview, affiant had Mr. Rasad come to the police station where he identified a picture of Kerry Crawford as being the person that he dropped off on March 19, 2002 as well as being a regular customer during the summer.
 {¶ 16} "5.) * * * Affiant also determined from an out-of-state Law Enforcement Automated Data Service search that Kerry Crawford has a history of burglary, possession of burglary tools, resisting arrest, larceny, drug related crimes and is listed as a violent [felon]. Also, his criminal history from New York State lists him as 5'8", 160 lbs. Based on the above information, affiant has reason to believe, and does believe, that it is necessary to search for the above [described] physical evidence and that it be seized for comparison purposes with the testimony of the witnesses. * * *"
 {¶ 17} Based on the foregoing, we find that the issuing magistrate was justified in determining that there was a fair probability that contraband would be found at appellant's residence. Probable cause was supported by the identification by Nget, who had worked with and was familiar with the assailant and was further supported by corroborating testimony by Ms. Cavano and an RTA bus driver, whose testimony placed appellant near the scene of crime that evening. Furthermore, the out-of-state Law Enforcement Automated Data Service revealed that appellant had a long criminal history, including burglary and possession of burglary tools and his physical description listed with the data service matched that of the assailant of the robbery that evening.
 {¶ 18} Appellant relies primarily on State v. Sharp (1996)107 Ohio App.3d 757, alleging that just as in that case, the affidavit in the instant case was based on hearsay without further assertions that the hearsay was credible and therefore was insufficient to establish probable cause. A careful reading of that case, however, reveals that the affidavit in that case contained hearsay information from an unnamed confidential reliable informant. After finding that the affidavit was based solely on hearsay from an alleged confidential reliable informant, the court went on to state:
 {¶ 19} "That is not to say, however, that an affidavit which relies solely upon hearsay is necessarily insufficient. Hearsay information may be considered in probable cause determinations so long as the affiant presents the magistrate with the affiant's basis of knowledge and some underlying circumstances supporting affiant's belief that the informant is credible." [Internal citations omitted.]
 {¶ 20} In this case, while the information upon which the magistrate relied was hearsay, the affiant presented the magistrate with his basis of knowledge and sufficient underlying circumstances to support his belief that the information from the eyewitnesses was credible. Furthermore, this case was not a case in which the affiant relied primarily on an unnamed informant; instead, the affiant presented the names of the eyewitnesses upon whose testimony the affidavit was based.
 {¶ 21} We find that the issuing magistrate had a substantial basis to believe that there was a fair probability that evidence relating to the robbery would be found at appellant's residence and was so justified in issuing a search warrant. We therefore overrule this assignment of error.
 {¶ 22} "II. The appellant's convictions for the one-year and three-year firearm specifications are not supported by sufficient evidence, thus are against the manifest weight of the evidence, where the state failed to show that the weapon allegedly used was operable."
 {¶ 23} Appellant maintains that there was insufficient evidence to demonstrate that the gun that he allegedly possessed while committing the underlying felony was operable or readily operable at the time of the offense. He further alleges that his convictions for the firearms specifications were against the manifest weight of the evidence. We disagree.
 {¶ 24} "Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386,1997-Ohio-52. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. "A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case." State v. Jenks (1991), 61 Ohio St.3d 259. If there is substantial evidence in support of a verdict, an appellate court may not substitute its judgment for that of the jury as to weight and sufficiency. Id.
 {¶ 25} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts, in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, supra., citing Gibbs v.Florida (1982), 457 U.S. 31, 38, 42. Accord State v. Often (1986),33 Ohio App.3d 339, 340. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. State v. Thompkins, supra.
 {¶ 26} R.C. 2941.141 provides, in relevant part:
 {¶ 27} "(A) Imposition of a one-year mandatory prison term upon an offender * * * is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."
 {¶ 28} R.C. 2941.145 provides, in relevant part:
 {¶ 29} "(A) Imposition of a three-year mandatory prison term upon an offender * * * is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 30} R.C. 2923.11 (B)(1) defines a "firearm" as:
 {¶ 31} "Any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can be readily rendered operable."
 {¶ 32} The statute further states:
 {¶ 33} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 34} The Ohio Supreme Court has held that proof of operability can be established beyond a reasonable doubt by testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. State v. Murphy (1990),49 Ohio St.3d 206, syllabus. The Ohio Supreme Court later refined the manner by which the state may prove a firearm specification in State v.Thompkins, supra, stating:
 {¶ 35} "In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Id. at 385.
 {¶ 36} In this case, one of the victims, Mr. Nget testified that appellant walked into the Speedway store with a gun just before closing. Appellant pointed the gun at the victim and in a threatening manner asked him, "you know what this is mother — * * *?" After striking the victim in the back of the head with the gun, appellant repeatedly threatened the victim's life, saying "You're going to die, mother — * * *, you're going to die tonight." Furthermore, Detective Branscum testified that he retrieved a gun matching the victim's description while executing the search warrant at appellant's home. Branscum found the loaded gun hidden in an air conditioning unit. Appellant's written statement to the police indicated that the firearm was loaded at the time of the robbery.
 {¶ 37} We find that, under the facts and circumstances in this case, it was reasonable to conclude that appellant's words and actions were meant to imply that his gun was in fact operable on the night of the robbery.
 {¶ 38} After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the firearm specifications proven beyond a reasonable doubt. Furthermore, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice such that the conviction must be reversed. We therefore overrule this assignment of error.
 {¶ 39} The judgment is affirmed.
Judgment affirmed.
James J. Sweeney and Sean C. Gallagher, JJ., concur.