[Cite as *State v. Priest*, 2011-Ohio-4694.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                        :

    Plaintiff-Appellee                         :              C.A. CASE NO.   24225

v.                                                          :              T.C. NO.    09CR3231

GREGORY LYNN PRIEST, JR.              :                 (Criminal appeal from
                                                                            Common Pleas Court)

    Defendant-Appellant                  :

                                                            :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___16th___ day of ___September___, 2011.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JEFFREY M. BRANDT, Atty. Reg. No. 0065475, 629 Main Street, Suite B, Covington, Kentucky 41011
    Attorney for Defendant-Appellant

. . . . . . . . . .

CELEBREZZE, J. (by assignment)

{¶ 1} Defendant-appellant, Gregory Priest, appeals his convictions for having a weapon while under disability and failure to comply with an order or signal of a police officer causing a substantial risk to others. After careful review of the record and relevant case law, we affirm appellant's convictions.

{¶ 2}  In May 2009, the grand jury returned an indictment against appellant, charging him with aggravated robbery, in violation of R.C. 2911.01(A)(1), with a firearm specification; failure to comply with an order or signal of a police officer causing a substantial risk to others, in violation of R.C. 2921.331(B) and (C)(5); and having a firearm while under a disability, in violation of R.C. 2923.13(A)(3).

{¶ 3}  In June 2010, the matter proceeded to a jury trial where the following evidence was presented.

{¶ 4}  Ryan Combs testified that on September 29, 2009, he was acting as the store manager at Cassano's Pizza in Moraine, Ohio when the restaurant was robbed by a masked man wielding a gun.  Combs testified that the man pointed a black nine millimeter handgun at his chest and ordered him to empty the store's register and safe.  Combs complied with the man's demands, and the man exited the restaurant with approximately $500.  At trial, Combs identified appellant as the man who brandished the handgun.

{¶ 5}  Officer Michael Cornely of the Moraine Police Department testified that he responded to a 911 call from Cassano's on September 29, 2009.  Officer Cornely testified that while responding to the robbery, he drove through the Cobblestone apartment complex, located near the rear entrance to Cassano's.  Officer Cornely indicated that he drove through Cobblestone because it was a high crime area, and, in his experience, it was very common for individuals to run into the apartment complex after committing a crime because it was "very easy to blend in there."  At that time, Officer Cornely observed two males sitting in a parked green Pontiac.  Upon seeing Officer Cornely approach the Pontiac in his patrol vehicle, the driver of the Pontiac rapidly accelerated out of the apartment complex.

Appellant was subsequently identified by officers as the driver of the Pontiac.

{¶ 6} Upon exiting the apartment complex, appellant led Dayton police officers on a chase, reaching speeds of 100 miles per hour, that ended with appellant crashing the Pontiac into a telephone pole. At one point during the pursuit, Officer Cornely observed the passenger in the Pontiac drop a handgun out the passenger side window. The passenger of the Pontiac was subsequently identified as Anthony Andrews.

{¶ 7} Officer Scott Pendley of the Dayton Police Department testified that he participated in the pursuit of appellant's Pontiac. Officer Pendley testified that he observed appellant flee on foot after the Pontiac crashed into a telephone pole. At that time, Officer Pendley pursued appellant and subsequently apprehended him after appellant ran into a residence at 433 Hopeland Avenue.

{¶ 8} Officer James Hogue of the Moraine Police Department testified that he was dispatched to Cassano's following the robbery. Officer Hogue testified that once the pursuit of the Pontiac ensued, he was directed to search for the firearm discarded from the passenger side of appellant's vehicle. Officer Hogue testified that he was able to retrieve the handgun, which was broken into multiple pieces. Additionally, Officer Hogue testified that he retrieved multiple nine millimeter bullets. Subsequent DNA analysis by the Miami Valley Regional Crime Laboratory revealed a mixed profile of contact DNA on the grip of the handgun. Tests conducted by the crime laboratory indicated that appellant could not be excluded as a contributor to the DNA. However, appellant's passenger, Anthony Andrews, was excluded as being a contributor to the mixed profile on the grip of the gun.

{¶ 9} At the conclusion of the trial, the jury found appellant not guilty on the charge

of aggravated robbery. However, the jury found him guilty of failing to comply with the order or signal of a police officer and of having a weapon while under disability. Appellant was ordered to serve five years in prison for each crime, to be served consecutively, for a total prison term of ten years.

{¶ 10} Appellant filed this timely appeal raising three assignments of error for review:

{¶ 11} I. "The trial court erred as a matter of law and abused its discretion by striking prospective juror number one for cause."

{¶ 12} II. "The trial court erred in failing to grant appellant's motion for judgment of acquittal, as the state's evidence was insufficient to support the conviction for firearm possession."

{¶ 13} III. "Appellant asks the court to review his consecutive sentences under R.C. 2953.08(C)."

**Law and Analysis**

**I**

{¶ 14} In his first assignment of error, appellant argues that the trial court erred as a matter of law and abused its discretion in striking prospective juror number one for cause. We disagree.

{¶ 15} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to be tried by an impartial jury. *Morgan v. Illinois* (1992), 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492. In deciding whether to exclude a juror for cause, the court must determine whether the prospective juror's views would

"prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas* (1980), 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581.

{¶ 16} R.C. 2313.43 provides that when a juror is challenged on suspicion of being prejudiced or partial to either party, "[t]he validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased." *State v. White*, 82 Ohio St.3d 16, 1998-Ohio-363. A trial court has broad discretion in determining a juror's ability to be impartial. *State v. Williams* (1983), 6 Ohio St.3d 281, 288. Thus, where a prospective juror is being challenged for bias, "[d]eference must be paid to the trial judge who sees and hears the juror." *Wainwright v. Witt* (1985), 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841.

{¶ 17} A decision on a challenge to a prospective juror regarding his or her fairness and impartiality constitutes reversible error only when the trial court is shown to have abused its discretion. The term "abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

{¶ 18} During jury selection, the trial court asked prospective jurors whether they had any personal or religious reasons for not accepting the law as given by the court. At that time, prospective juror number one stated that she "would have a real hard time judging another person."

{¶ 19} Subsequently, the trial court asked whether anyone could think of a reason that would prevent him or her from rendering a fair and impartial verdict. Juror number one responded and the following exchange took place:

{¶ 20} "JUROR:  I think that's where it would become a problem.  I mean, I've really been thinking about why this happened or what led up to this, and * * *

{¶ 21} "COURT:  Sure.

{¶ 22} "JUROR:  You know, it could cloud facts, and I wouldn't want it to, but, you know, people behave for a reason, you know.

{¶ 23} "COURT:  They do.  And we're not going to ask you to consider any of those reasons.

{¶ 24} "JUROR:  And it could just, you know, that could be where I would be coming from and I wouldn't want to mess up —

{¶ 25} "COURT:  Okay.

{¶ 26} "JUROR:  — the decisions and the laws.

{¶ 27} "COURT:  Okay.

{¶ 28} "JUROR:  Just so you're aware.

{¶ 29} "COURT:  No, that's important.  Are you saying you think it would be difficult for you to be fair and impartial in this case?

{¶ 30} "JUROR:  I would certainly try to be very very fair and very very impartial, but I would consider this whole person.

{¶ 31} "COURT:  Even if I asked you don't consider it?

{¶ 32} "JUROR:  I would try very hard not to.

{¶ 33} "COURT:  Okay, because what I'm going to do ultimately is ask you to consider the evidence on the stand, and you won't hear all that.  You won't hear about the background and other things.  You'll hear about the evidence from the stand, what

happened on that date, and you will hear what the law is as it applies to those facts. You are not — you are not to bring in other facts or other considerations, only what you hear here, okay? Do you think you could do that?

{¶ 34} "JUROR: I would make every effort to do that.

{¶ 35} "COURT: Okay. Okay. Thank you, [juror number one]. Thank you."

{¶ 36} At the conclusion of voir dire, counsel met in chambers with the trial court to discuss challenges to the potential jurors. The state moved to excuse juror number one for cause. Over defense counsel's objection, the trial court excused juror number one, stating, "She did not say that she would be fair and impartial, she said she would try to be fair and impartial. But I don't think [that is] the standard we are looking for. So, she will be excused." Thereafter, jury selection was completed with the state using only two of its four peremptory challenges.

{¶ 37} After reviewing the record and the transcripts of the voir dire, we conclude that the trial court did not abuse its discretion in finding that the views and opinions of juror number one would have substantially impaired her ability to perform her duties as a juror. The trial court was in the best position to determine juror number one's ability to be impartial, and her statements that she would merely try to be fair and impartial illustrate her potential bias. Further, any potential error in excusing juror number one for cause was harmless. The state still had two of its four peremptory challenges remaining and, had juror number one not been excused for cause, the state could have exercised one of its remaining peremptory challenges. *State v. Williams*, Hamilton App. No. C-040747, 2005-Ohio-6772, ¶22.

{¶ 38} Appellant's first assignment of error is overruled.

## II

{¶ 39} In his second assignment of error, appellant argues that the state's evidence was insufficient to support his conviction for having a weapon while under disability. We disagree.

{¶ 40} A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶ 41} In the instant case, appellant was convicted of having a weapon while under disability, in violation of R.C. 2923.13(A)(3). In order to sustain a conviction for having a weapon while under disability, the state was required to prove beyond a reasonable doubt that appellant knowingly acquired, carried, or used a firearm.

{¶ 42} Initially, appellant contends that the state failed to prove beyond a reasonable doubt that he knowingly possessed a firearm. "Constructive possession can be sufficient to

support a charge of having weapons while under a disability." *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, ¶10. Constructive possession exists "when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." Id., citing *State v. Wolery* (1976), 46 Ohio St.2d 316, 329. "Thus, possession of a firearm in violation of R.C. 2923.13 may be inferred when the defendant has exercised dominion and control over the area where the firearm was found." *State v. Sebastian*, Highland App. No. 08CA19, 2009-Ohio-3117, ¶35.

{¶ 43} "Dominion and control, as well as whether a person was conscious of the presence of an item of contraband, may be established by circumstantial evidence." *State v. Trembly* (2000), 137 Ohio App.3d 134, 141. Circumstantial evidence is defined as "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved." *State v. Nicely* (1988), 39 Ohio St.3d 147, 155. While a defendant's mere presence in an area where contraband is located does not conclusively establish constructive possession, a defendant's proximity to contraband may constitute some evidence of constructive possession. *Sebastian* at ¶36. Mere presence in the vicinity of contraband, coupled with one other factor probative of dominion or control over the contraband, may establish constructive possession. Id.

{¶ 44} In the case at hand, appellant was one of only two people inside the Pontiac when the gun was thrown from the passenger side window of the vehicle. Therefore, appellant was in the vicinity of the firearm in question. Moreover, evidence probative of appellant's domination or control over the gun was presented by the state through the

testimony of Amy Rismiller of the Miami Valley Regional Crime Laboratory. Rismiller testified that she found a mixed profile of contact DNA on the grip of the gun retrieved by officers and compared that DNA with the known standards for appellant. Rismiller testified that the analysis conducted on the gun indicated that appellant could not be excluded as having contributed DNA to the mixed profile found on the weapon.

{¶ 45} Additionally, the state presented evidence probative of appellant's possession of the firearm through the testimony of Combs. At trial, Combs identified appellant as the man who held a nine millimeter handgun at his chest.

{¶ 46} Considering the DNA evidence in conjunction with appellant's presence in the vicinity of the firearm and Combs's testimony at trial, a rational trier of fact could have concluded, beyond a reasonable doubt, that appellant possessed the firearm that was thrown from his vehicle's passenger window.

{¶ 47} Alternatively, appellant argues that the evidence presented by the state was insufficient to support his conviction for having a firearm while under disability because the gun did not meet the statutory definition of "firearm" under R.C. 2923.11(B). Therefore, we must review the definition of "firearm" and determine whether there was sufficient evidence presented to support appellant's conviction for having a firearm while under disability and the firearm specification.

{¶ 48} R.C. 2923.11 defines "firearm" as follows:

{¶ 49} "(B)(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can

readily be rendered operable.

{¶ 50} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

{¶ 51} Thus, under R.C. 2923.11, for an individual to be found guilty of a firearm disability charge or firearm specification, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense.

{¶ 52} "The [s]tate can prove that the weapon was operable or could readily have been rendered operable at the time of the offense in a variety of ways without admitting the firearm allegedly employed in the crime into evidence." *State v. Gains* (1989), 46 Ohio St.3d 65, syllabus. The Ohio Supreme Court has held that "proof of operability can be established beyond a reasonable doubt by testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." *State v. Murphy* (1990), 49 Ohio St.3d 206, syllabus.

{¶ 53} Moreover, whether a firearm was operable or capable of being readily rendered operable at the time of the offense is determined within the context of "all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *Thompkins* at 385; *State v. Crawford*, Cuyahoga App. No. 82833, 2004-Ohio-500.

{¶ 54} In this case, the firearm recovered by the police was shattered into several

pieces when it was thrown from the passenger window of appellant's vehicle. At trial, the state submitted that, although the firearm was shattered, the jury was capable of reaching the conclusion that the firearm was operable based on the testimony of Combs. Combs testified that a man entered Cassano's Pizza, pointed a black nine millimeter handgun directly at him, and ordered Combs to give him all the money in the register and safe. Combs testified that he complied with the man's demands and emptied the safe and register while the man continued to point the gun at Combs's chest. Additionally, Combs identified appellant as the individual who brandished the handgun.

{¶ 55} When considered in a light most favorable to the state, Combs's testimony was sufficient to prove that the handgun was brandished with an implicit threat to use it. Thus, the state's evidence was sufficient to prove beyond a reasonable doubt that the gun was operable.

{¶ 56} Appellant contends that the state's reliance on Combs's testimony to establish circumstantial proof of operability is inconsistent with appellant's acquittal on the aggravated robbery charge. However, appellant's contention is without merit. "An appellate court is not permitted to speculate about the reason for the inconsistency when it determines the validity of a verdict." *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶16, discretionary appeal not allowed 108 Ohio St.3d 1475, 2006-Ohio-665. In criminal cases, consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal. *State v. Woodson* (1985), 24 Ohio App.3d 143; *State v.*

*Adams* (1978), 53 Ohio St.2d 223. The reason the inconsistency does not matter is because "several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St.3d 440, 1997-Ohio-371, at paragraph one of the syllabus.

{¶ 57} Appellant's second assignment of error is overruled.

### III

{¶ 58} In his third assignment of error, appellant argues that the trial court erred by ordering him to serve his sentences consecutively without making any of the findings set forth in R.C. 2929.14(E).

{¶ 59} The Ohio Supreme Court recently rejected this argument in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320. In *Hodge*, the court held that "* * * the decision of the United States Supreme Court in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Because the statutory provisions are not revived, trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made."

{¶ 60} Based on the authority of *Hodge*, appellant's third assignment of error is overruled.

{¶ 61} The judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

R. Lynn Nothtine
Jeffrey M. Brandt
Hon. Steven K. Dankof