[Cite as *State v. Quinn*, 2017-Ohio-7000.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2014-CA-44 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-869 |
| | : | |
| JAMES QUINN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of July, 2017.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

JAMES QUINN, Inmate No. 699-607, London Correctional Institution, P.O. Box 69, London, Ohio 43140
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Following a trial held on March 24-25, 2014, a jury found Defendant-appellant, James Quinn, guilty of two counts of domestic violence, third degree felonies in violation of R.C. 2919.25; two counts of kidnapping, first degree felonies in violation of R.C. 2905.01(A)(2) and (B)(1); one count of abduction, a third degree felony in violation of R.C. 2905.02(A)(2); and one count of intimidation of a victim in a criminal case, a third degree felony in violation of R.C. 2921.04(B)(1). Quinn argues that his resulting conviction should be vacated because the trial court erred by overruling challenges for cause he directed at two prospective jurors. We hold that the trial court did not abuse its discretion when it overruled the challenges for cause, and therefore, we affirm.

## I. Facts and Procedural History

{¶ 2} A jury found Quinn guilty as charged on March 25, 2014, at the conclusion of a two-day trial. At his disposition hearing, held on March 26, 2014, the trial court merged the two kidnapping offenses with the abduction offense for purposes of sentencing, and the State elected to proceed on one of the kidnapping offenses. The court sentenced Quinn to serve consecutive terms of three years' imprisonment for each of the charges of domestic violence; 11 years for the merged charge of kidnapping; and three years for the charge of intimidation of a victim, for a total sentence of 20 years.

{¶ 3} Quinn appealed his conviction, and in *State v. Quinn,* 2016-Ohio-139, 57 N.E.3d 379 (2d Dist.), decided on January 15, 2016, we affirmed the trial court's judgment. On April 12, 2016, Quinn filed an application to re-open his appeal based upon a claim of ineffective assistance of appellate counsel, faulting counsel for failing to present arguments concerning the trial court's rulings on the challenges for cause he raised during

voir dire.   We granted Quinn's application to re-open on May 11, 2016.   Although we appointed counsel to represent Quinn for this appeal, he elected instead to represent himself and filed a motion on October 3, 2016 for leave to proceed pro se.   We sustained Quinn's motion on October 20, 2016.

## II. Analysis

{¶ 4} For the first of his three assignments of error, Quinn contends that:

THE TRIAL COURT ERRONEOUSLY OVERRULED A CHALLENGE FOR CAUSE THAT RESULTED IN THE APPELLANT HAVING TO USE A PEREMPTORY CHALLENGE UNNECESSARILY. THE APPELLANT EXHAUSTED ALL OF HIS PEREMPTORY CHALLENGES BEFORE A FULL JURY WAS SEATED WHICH [SIC] IS REVERSIBLE ERROR.[1]

{¶ 5} The "Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to be tried by an impartial jury."   *State v. Priest*, 2d Dist. Montgomery No. 24225, 2011-Ohio-4694, ¶ 15, citing *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); *see also* Article I, Section 10, Ohio Constitution (establishing that, "[i]n any trial, in any court, the party accused" has the right to a "speedy public trial by an impartial jury").   When deciding whether to exclude a prospective juror for cause, a court must determine whether that person has "views that would 'prevent or substantially impair the [person's] performance' " of the duties of a juror

---

[1] Before the State filed its brief, and without requesting leave, Quinn submitted an amendment to his initial brief on December 5, 2016, setting forth four additional assignments of error.  We decline to address these additional assignments of error individually because they are merely redundant expressions of the second and third assignments of error that Quinn raises in his initial brief.

" 'in accordance with [the court's] instructions and [the juror's] oath.' " *Priest*, 2011-Ohio-4694, ¶ 15, quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). Under R.C. 2313.17(B)(9) and (D), and R.C. 2945.25(B), a prospective juror may be challenged, among other things, for an inability to "be * * * fair and impartial" or, similarly, for suspected bias against the prosecution or the defense.

{¶ 6} Given that the "determination of juror bias necessarily involves a[n] [assessment of] credibility, the basis of which often will not be apparent from an appellate record," a court of appeals must give " 'deference * * * to the trial judge who sees and hears the [challenged] juror.' " *State v. DePew*, 38 Ohio St.3d 275, 280, 528 N.E.2d 542 (1988), quoting *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 83 LEd.2d 841 (1985). The relevant inquiry in this situation is " 'whether the composition of the jury panel as a whole could possibly have been affected by the trial court's [putative] error.' " (Emphasis omitted.) *Gray v. Mississippi*, 481 U.S. 648, 665, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987), quoting *Moore v. Estelle*, 670 F.2d 56, 58 (5th Cir.1982); *see also State v. Broom*, 40 Ohio St.3d 277, 287, 533 N.E.2d 682 (1988), citing *Gray*, 481 U.S. at 665. Thus, a defendant in a criminal case " 'cannot complain of prejudicial error in the overruling of a challenge for cause if [the] ruling does not force him to exhaust his peremptory challenges.' " (Emphasis omitted.) *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 29, quoting *State v. Eaton*, 19 Ohio St.2d 145, 249 N.E.2d 897 (1969), paragraph one of the syllabus.

{¶ 7} The decision "whether to disqualify a juror for cause is a discretionary function of the trial court" and is "not reversible on appeal absent an abuse of discretion." *State v. Choice*, 2d Dist. Montgomery No. 25131, 2013-Ohio-2013, ¶ 19, citing *Berk v.*

*Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990), syllabus. An abuse of discretion is "a decision that is unreasonable, arbitrary, or unconscionable." *Id.*, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Because Quinn used all of his peremptory challenges, we turn to the merits of his first assignment of error. Trial Tr. 42, 49, 54-55 and 62, Mar. 24-25, 2014.

{¶ 8} Quinn argues that the trial court should have excused Prospective Juror No. 58 (the "Locksmith") as the result of bias in favor of the State.[2] *See* Appellant's Br. 2-5. He cites the following as illustrative of the Locksmith's purported bias:

PROSECUTOR: * * *. Do you have any close friends or family in law enforcement?

THE LOCKSMITH: Most of them are retired.

PROSECUTOR: Anything from the interactions that you've had with them that would keep you from being a fair and impartial juror today?

THE LOCKSMITH: I believe them more than I believe regular people.

PROSECUTOR: Let's talk about that. That's an interesting statement. Would you agree with me that police officers have certain experience and expertise that the rest of us may not have?

---

[2] In our decision granting Quinn's application to re-open this appeal, we stated that the "reopening is limited to the issue regarding a potential error in the jury selection process," referring to the trial court's decision to overrule Quinn's challenge for cause to a deputy with the Clark County Sheriff's Department. Decision & Entry 3-4, May 11, 2016. Quinn had also raised the trial court's decision overruling his challenge to the Locksmith in his application to re-open, though we did not refer to this latter issue when we re-opened the appeal. Construing our decision in light of Quinn's application, we find that the omission of any reference to the issue concerning the Locksmith was inadvertent, and that our decision was intended to accept not only the issue concerning the Clark County Sheriff's Deputy, but the issue concerning the Locksmith, as well. The State has addressed both of these issues in its appellee's brief.

THE LOCKSMITH: Yes.

PROSECUTOR: They respond to scenes and handle things that we can't even imagine.

THE LOCKSMITH: Yes.

PROSECUTOR: Does that mean that police officers[,] at least in your mind[,] don't make the same mistakes that the rest of us make?

THE LOCKSMITH: Yes.

PROSECUTOR: Do you think that police officers are above * * * stretching the truth?

THE LOCKSMITH: For the most part, yes.  I worked as a special with them for twenty-five years, and I still do odds and ends work with them.

PROSECUTOR: Do you think just because a police officer comes in here today and tells you that something happened, does that mean—or because a police officer has filed charges[,] do you think that means that the defendant is guilty?

THE LOCKSMITH: I believe he does.

PROSECUTOR: You believe the police officer does?

THE LOCKSMITH: Yes.   But it's yet to be proven[,] though.

Trial Tr. 56-58.   After this exchange, Quinn's attorney questioned the Locksmith as follows:

DEFENSE COUNSEL: [I]s it because you have worked so closely with law enforcement that you would believe an officer to be truthful?

THE LOCKSMITH: Probably so.   I worked as a special on the third

shift a couple of times a month for twenty-five years.

DEFENSE COUNSEL: If an officer got up on the stand and told you something, can you imagine that you would ever not believe him? If he looked you in the eye and told you something happened, he witnessed it or--

THE LOCKSMITH: If he said he witnessed it, I would believe him.

DEFENSE COUNSEL: What if that conflicted with another witness, who would you believe?

THE LOCKSMITH: I would have the tendency to believe the police officer first.

* * *

DEFENSE COUNSEL: Even though an officer has filed charges against my client and he's sitting here, because of that do you have any preconceived notions about my client's innocence?

THE LOCKSMITH: Just because he's filed charges and---

DEFENSE COUNSEL: Yes.

THE LOCKSMITH: ---I don't have any preconceived---

DEFENSE COUNSEL: The officer swears in a statement things that if believed by you, would probably render a guilty verdict, does that change your mind about whether you think my client is innocent or not innocent sitting here?

THE LOCKSMITH: Depending upon what the officer would say when he's sitting in the chair.

DEFENSE COUNSEL: And if he said the same thing [on the stand] that's in the [sworn statement]?

THE LOCKSMITH: I would have a tendency to believe it.

*Id.* at 59-61.

{¶ 9} Notwithstanding that the Locksmith expressed a tendency to believe law enforcement personnel more readily than others, we conclude that his statements did not evince an inability to remain impartial or reveal an implacable bias in favor of the State. He also expressed his understanding that the State bore the burden of proof, attested to his belief in the principle that a criminal defendant should be presumed innocent until proven guilty, and disclaimed having any preconceived opinions about Quinn's guilt or innocence. *Id.* at 57-58, 60.

{¶ 10} Quinn argues, even so, that the Locksmith "could not [have been] fair and impartial because he stated he could not," citing to our decision in *State v. Leavell*, 2d Dist. Montgomery No. 10919, 1989 WL 33104 (Apr. 7, 1989), in support of this assertion. Appellant's Br. 3. Quinn's characterization of the Locksmith's responses consists more of advocacy than accuracy, however, given that the Locksmith articulated his understanding of the State's burden of proof, as well as his belief that Quinn should be presumed innocent until proven guilty. Our decision in *Leavell*, for that matter, lends no support to Quinn's argument. In *Leavell*, when a prospective juror challenged for cause was asked whether he could give the defendant a fair trial, the juror twice answered that he did not think he could. *Leavell*, 1989 WL 33104, *1-2. Here, the Locksmith made no equivalent statement. His association with law enforcement officers, moreover, did not of itself warrant his dismissal for cause. *See e.g. State v. Dye*, 8th Dist. Cuyahoga No.

103907, 2016-Ohio-8044, ¶ 24-29 (finding a law enforcement officer's mother-in-law could have been fair and impartial if allowed to serve as a juror in a criminal case); *State v. McGlothin*, 1st Dist. Hamilton No. C-060145, 2007-Ohio-4707, ¶ 11-12 (similarly finding that a retired police officer could have been a fair and impartial juror).

{¶ 11} Deferring as we must to the trial court's assessment of the Locksmith's credibility, and having undertaken an independent review of his statements during voir dire, we find that the Locksmith qualified to serve as a fair and impartial juror. Therefore, we hold that the trial court did not abuse its discretion by denying Quinn's challenge for cause. Quinn's first assignment of error is overruled.

{¶ 12} For his second assignment of error, Quinn contends that:

THE JURY SELECTION PROCESS WAS FURTHER TAINTED WHEN A DEPUTY SHERIFF WAS INVOLVED IN THE APPELLANTS [SIC] CASE AND FAILED TO MAKE THE TRIAL COURT AWARE OF HIS INVOLVEMENT. THE STATE ALSO FAILED TO MAKE THE TRIAL COURT AWARE OF HIS INVOLVEMENT.

{¶ 13} This assignment of error relates to Prospective Juror #11, a deputy with the Clark County Sheriff's Department (the "Deputy"). According to Quinn, the State "knew, or should have known[,] that [the] Deputy * * * was involved in [his] case," but neither the State nor the Deputy himself disclosed as much to the trial court during voir dire. Appellant's Br. 5-6. Quinn posits that the alleged failure to disclose "constitutes prosecutorial misconduct." *Id.* at 6. He presented the same issue as the first assignment of error in his application to re-open this appeal.

{¶ 14} In our decision granting Quinn's application to re-open, we noted that

although he was thus "attempt[ing] to raise a new issue regarding pre-trial discovery of [certain] police reports written by the Clark County Sheriff's Office," which he "asserts * * * were not provided during pre-trial discovery," he did "not establish[] that the pertinent documents are part of the trial court record." Decision & Entry 3-4, May 11, 2016. As a result, we "limited [this re-opened appeal] to the issue[s] regarding * * * potential error[s] in the jury selection process." *Id.* at 4. Quinn's second assignment of error is consequently overruled.

{¶ 15} For his third assignment of error, Quinn contends that:

DEPUTY [* * *], THE DEPUTY INVOLVED IN THE APPELLANTS [SIC] CASE, KNEW BOTH THE LEAD DETECTIVE AND BOTH PROSECUTORS IN THE APPELLANTS [SIC] TRIAL. DEPUTY [* * *] SPOKE TO OTHER OFFICERS ABOUT THE CASE, AND WAS DIRECTLY INVOLVED IN THE APPELLANTS [SIC] CASE. THE APPELLANT UNNECESSARILY USED A PEREMPTORY CHALLENGE TO REMOVE THE DEPUTY. THIS IMPAIRED THE APPELLANT'S PEREMPTORY CHALLENGE RIGHTS.

{¶ 16} During voir dire, the prosecutor asked the members of the panel to indicate whether they knew him, the assistant prosecutor, or the detective with the Springfield Police Department who had led the investigation into the charges against Quinn. Trial Tr. 20, 252-253. The Deputy indicated that he knew "[e]very one" of them. *Id.* at 21. After questioning several other members of the panel, the prosecutor returned to the Deputy and had the following exchange with him:

PROSECUTOR: * * *. You are a deputy [s]heriff and have been in

that position for a number of years now?

THE DEPUTY: Fifteen.

PROSECUTOR: This case does not involve the Clark County Sheriff's Department. Have you had any discussions with anyone who is involved with this case about this case [sic]?

THE DEPUTY. I'm not sure exactly which case it is. I am familiar with the defendant[,] though.

PROSECUTOR: I'm not going to ask you any more questions. * * *.

*Id.* at 28-29. Quinn's counsel did not examine the Deputy, and the trial court overruled his challenge for cause without comment. *Id.* at 28-38.

**{¶ 17}** In support of his challenge, Quinn bore the burden of establishing cause. The party "seeking exclusion [of a prospective juror] must demonstrate, through questioning, that the potential juror lacks impartiality." *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *see also State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 57, citing *Wainwright*, 469 U.S. at 423. To this end, questions "on voir dire must be sufficient to identify prospective jurors who hold views that would prevent or substantially impair them from performing the duties required of jurors." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 57, citing *Morgan v. Illinois*, 504 U.S. 719, 734-735, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

**{¶ 18}** Quinn's counsel chose not to ask any questions of the Deputy, and the Deputy's responses to the State's inquiries raised only the possibility that the Deputy could not be impartial. With that possibility raised, however, Quinn bore the burden to pose questions sufficient to demonstrate that the Deputy lacked impartiality—whether on

the basis of involvement with the case, interaction with the prosecuting attorneys and officers of the Springfield Police Department, or both. Quinn argues that a "law enforcement officer who asserts that he is 'familiar' with the defendant [is] essentially stating that he had dealt with [the defendant] before in his professional capacity," yet in the absence of any specific information about the nature of such familiarity, other explanations are equally as likely. Appellant's Br. 7. For example, the officer might be personally acquainted with the defendant or might have interviewed the defendant as a witness in the course of an unrelated matter. Quinn's counsel did not question the Deputy or otherwise attempt to establish that the Deputy would be unable to remain impartial, meaning that Quinn did not satisfy his burden to demonstrate, through questioning, that the Deputy would be unsuitable for service on his jury. On the record before us, then, we find that the trial court did not abuse its discretion in denying Quinn's challenge for cause to the Deputy. Quinn's third assignment of error is overruled.

### III. Conclusion

{¶ 19} We find that the trial court did not abuse its discretion by overruling Quinn's challenges for cause to the service of the Locksmith and the Deputy as jurors. The judgment of the trial court is therefore affirmed.

. . . . . . . . . . . .

HALL, P.J., concurring.

{¶ 20} I fully agree with the analysis and conclusions of the majority opinion. I write separately to express my belief that, on this record, even if two jurors harbored a preference to believe the testimony of police officers that preference was harmless and

insufficient to create reversible error.

{¶ 21} At trial, the defense in this domestic dispute between mother and son challenged mother's credibility. Her story that her son abducted her, threatened and attacked her, and threatened to make her jump off a roadside bridge was corroborated by photographs of her face, head and arm, photos from their house, and the testimony of a lay witness in the Wal-Mart parking lot from whom she sought refuge. The defense did not offer any witnesses with contrary evidence.

{¶ 22} The credibility of any of the police officers was never in question. Four officers testified. None of them were present at the time of any abduction, assault, or intimidation, and none of their testimony introduced any elements of the various offenses. Officer Ronnie Terry was dispatched in regard to the initial incident at the victim's home on a "[d]omestic dispute between mother and son." (T. 88). He testified mother was visibly shaken, but he observed no visible injury, a fact the defense inquired about and highlighted. He took her statement and photographs. Officer Josh Clark also had responded to the home. He too saw no visible injury to mother although he agreed she was "nervous, scared, and hesitant at first." (T. 102). He saw no damage to the house. Again the defense did not question Clark's credibility but rather inquired about the lack of injury or damage and relied upon the accuracy of his testimony.

{¶ 23} Several hours later, Officer Paul Herald was dispatched to the Wal-Mart parking lot on a report of a woman assaulted. He said she had a "large lump above her left eye, swelling, [and] bruising." (T. 115). He took multiple pictures of her face, forehead, and eyelid, which were shown and described to the jury and were introduced into evidence. He also testified about the subsequent pictures, taken at mother's home, which

demonstrated damage to her bedroom door and which also were introduced into evidence. Through Herald, the defense introduced several additional pictures from inside the house, suggesting the presence of drug activity. The only criticism of his investigation was his failure to search for or to locate the bridge where son demanded she jump to see if there was any evidence at that location. The credibility of Herald was not at issue.

{¶ 24} The last police witness, Detective James Byron, testified about the chain of custody of the Wal-Mart surveillance video, which he retrieved from the store. He was not questioned by the defense.

{¶ 25} Finally, in closing argument, the defense made no reference to any issue about the credibility of any police officers. Indeed, most of the evidence that the defense used to denigrate the credibility of the victim was the evidence supplied by the police officers.

{¶ 26} In my opinion, the record demonstrates there was never a question about the credibility of the police officers, who were not present and did not directly testify about the assault, kidnapping, or intimidation. They did not testify to any element of the offenses for which the defendant was convicted. Accordingly, the contention that a juror might give a police officer more credibility than a lay person is of no consequence here and does not raise prejudicial error. *Compare State v. Pernell*, 6th Dist. Lucas No. L-11-1036, 2011-Ohio-6918, ¶ 18 ("Even had the other prospective jurors heard the marshall's remark and were persuaded that law enforcement officers were more likely to be truthful, this could not have affected the outcome of this trial. The key witnesses here were not police, but three witnesses who testified that appellant shot Ryland Garrett. Consequently any harm the marshall's statement may have engendered was harmless."); *State v. Bonnell*, 8th

Dist. Cuyahoga No. 55927, 1989 WL 117828, *11 (Oct. 5, 1989) ("Stating one's opinion that police officers are inherently more believable than other witnesses is quite different from showing an enmity or bias toward the state. This is especially so where, as here, defendant has acknowledged that it was the credibility of two non-law enforcement witnesses that was crucial to the state's case."), *aff'd*, 61 Ohio St.3d 179, 573 N.E.2d 1082 (1991).

FROELICH, J., dissenting:

**{¶ 27}** I would find that the trial court abused its discretion in failing to disqualify two prospective jurors who were challenged for cause.   Accordingly, I dissent.

**{¶ 28}** "A trial court has broad discretion in determining a prospective juror's ability to be impartial."   *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 94.   And "[a] trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion."   *Id*.   An appellate court must indeed give deference to discretionary decisions by a trial court; otherwise appeals would, in essence, be a second bite at the factual apple and would not establish rules to guide trial courts going forward.

**{¶ 29}** But perhaps the pejorative term, "abuse," is misleading as to our standard of review. [3]   The oft-cited definition as a decision that is unreasonable, arbitrary or unconscionable is itself subject to different interpretations.[4]   Discretionary action should

---

[3] One court has attributed the continued use of the term to the fact that "most appellate judges suffer from misocainea."   *State v. Chapple*, 135 Ariz. 281, 297, 660 P.2d 1208 (1983), fn. 18, *superseded by statute on other grounds.*

[4] *See, e.g.,* Painter and Walter, *Abuse of Discretion; What Should It Mean Under Ohio Law*, 29 Ohio N.L.Rev. 209 (2002).

not be set aside by a reviewing court unless it has "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Josephson*, 218 F.2d 174, 182 (1st Cir.1954), *overruled on other grounds*, *In re Union Leader Corp.*, 292 F.2d 381 (1st Cir.1961).

{¶ 30} Here, Juror #5, a locksmith, stated that he worked as a "special" with police officers on the third shift a couple of times a month for 25 years and still did "odds and ends work with them." (It is not evident what agency or department this was with.) He stated he would both have a "tendency to believe" law enforcement officers, and "would believe" an officer who said he witnessed "something happen." When specifically asked if his interactions with law enforcement would keep him from being a fair and impartial juror, Juror #5 responded, "I believe them more than I believe regular people."

{¶ 31} In response to Quinn's challenge for cause regarding Juror #5, the prosecutor responded, "I think it's pretty clear from [the juror's] answers that he does have faith in law enforcement and would tend to believe law enforcement, but I think he also said that he could be a fair and impartial juror and if there was evidence that contradicted any police officer's statement, he would look at the evidence and make his decision accordingly." The court overruled the challenge for cause, and Quinn exercised a peremptory challenge.

{¶ 32} The record does not reflect that Juror #5 ever said he could be fair and impartial. To the contrary, Juror #5 stated that if an officer's testimony "conflicted with another witness," he would "have the tendency to believe the police officer first." Juror #5 stated that he had no "preconceived [notions about the defendant's innocence]," but he repeatedly indicated he "would have a tendency to believe" law enforcement officers

over others.   In short, Juror #5's answers reflected an unequivocal lack of impartiality in how he would assess the credibility of witness-police officers versus other witnesses. Further, R.C. 2313.17(D) provides that "[t]he validity of the challenge [for cause] shall * * * be sustained if the court has any doubt as to the juror's being entirely unbiased."   The trial court could not have reasonably been without doubt that Juror #5's answers reflected that he could be a fair and impartial juror.

{¶ 33} Juror #11 was a deputy sheriff in Clark County for 15 years and knew both assistant prosecutors and the Springfield Police Department officers who testified. When asked if he "had any discussions with anyone who is involved with this case about this case," the juror said he was "not sure exactly which case it is.   I am familiar with the defendant though."   No additional questions were asked of Juror #11.   The trial court summarily overruled a challenge for cause, and Quinn exercised a peremptory challenge.

{¶ 34} Whether the trial court abused its discretion in failing to disqualify Juror #11 for cause is a closer question.   There was no definite answer whether Juror #11 had discussions about Quinn's case with the officers involved, and neither the prosecutor nor defense counsel asked follow-up questions to explore whether the deputy sheriff would give deference to the witness-police officers, how the deputy sheriff was "familiar" with Quinn, whether the deputy sheriff's familiarity with the prosecutors would affect his ability to sit as a fair and impartial juror, and whether the deputy sheriff believed he could be fair and impartial.

{¶ 35} Nevertheless, Juror #11's responses reflected that he was a member of law enforcement, knew the prosecutors and the State's representative (Detective Byron), and was "familiar with the defendant."   His statement that he was "familiar with the defendant"

in response to the inquiry about police and this case implied that his familiarity arose from Quinn's involvement with the criminal justice system. Given Juror #11's employment and his familiarity with both the prosecutors and Quinn in the criminal justice context, I would conclude that the trial court should have granted Quinn's challenge for cause as to Juror #11, as well.

{¶ 36} The lack of impartiality evinced by the prospective jurors is not a criticism of them individually; we all have implicit and explicit biases and these jurors directly and honestly answered the questions put to them. Such attitudes do not dissolve in a general acquiescence to a conclusory question about whether a juror understands the presumption of innocence or can be fair and impartial. I would find the decision not to grant the challenges for cause to be not guided by reason (unreasonable), without adequate defining principles (arbitrary), as well as unconscionable (affronting the sense of justice or reasonableness). Accordingly, I would reverse Quinn's conviction and remand for a new trial.

. . . . . . . . . . . . .


Copies mailed to:

Megan M. Farley
James Quinn
Hon. Douglas M. Rastatter