[Cite as *State v. Choice*, 2013-Ohio-2013.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

ANTHONY D. CHOICE

      Defendant-Appellant

Appellate Case No. 25131

Trial Court Case No. 2011-CR-1400

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of May, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

REBEKAH S. NEUHERZ, Atty. Reg. #0072093, 150 North Limestone Street, Suite 218, Springfield, Ohio 45502
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     Defendant-appellant Anthony Choice appeals from his conviction and sentence for Improper Handling of a Firearm and Having Weapons Under a Disability.   Choice contends that the trial court erred by failing to remove three jurors for cause, thereby forcing him to remove them with his peremptory challenges.   He further claims that the court erred by denying his motion for a mistrial, and by denying his Crim.R. 29 motion for acquittal.   Finally, Choice contends that the trial court erred by overruling his motion to suppress evidence that he claims was obtained as the result of an illegal seizure.

{¶ 2}     We conclude the trial court did not err in overruling the motion to suppress. The police officer had a proper basis for a stop because he had reason to believe that the car was illegally parked.   Later, he had a proper basis for detention because two of the occupants were minors whom he had reason to believe were in violation of curfew.   During the detention, the officer was permitted to remove occupants from the vehicle.   When Choice was removed from the vehicle, the firearm forming the basis for the charges against Choice was lying on the floor of the car, in plain view.

{¶ 3}     We further conclude that the trial court did not err by denying the motion for a mistrial.   The trial court conducted individual inquiry of the jurors concerning a remark that had been made by a member of the jury pool toward the end of voir dire, and reasonably concluded from the inquiry that no jurors had been prejudiced by the remark.   The trial court did not err in denying to the Crim.R. 29 motion for a judgment of acquittal, because the State presented evidence sufficient to prove the essential elements of the charged offenses.   Finally, we conclude that the trial court did not abuse its discretion by denying Choice's request to remove three jurors

for cause, because all three indicated that they could be fair and impartial. Accordingly, the judgment of the trial court is Affirmed.

## I. A Parking Citation Leads to Choice's Arrest

{¶ 4}    Dayton Police Officer Timothy Braun was on routine patrol in the early morning hours one day in April 2011, when he observed a motor vehicle "parked very oddly," with the front parked near the curb and the back parked about two feet from the curb. The car was not running, and no lights were on. Braun thought he was going to write a parking ticket for the vehicle. As Braun pulled behind the car and used his spotlight to illuminate it, he noticed that the vehicle was occupied. Braun approached the vehicle and made contact with the driver on the driver's side. Braun asked the driver why she was parked there, to which she responded that she was letting the car cool down because it had been overheating. Braun looked in the car and observed that there were two female passengers and one male passenger, later identified as Choice. Choice did not look at the officer. Choice held two cellular telephones; one to the side of his head at his ear and the other in front of the lower half of his face.

{¶ 5}    Braun asked the female passengers their age, to which they responded that they were seventeen. Braun decided to cited them for a curfew violation. Braun then asked Choice his name and age. Choice stated that his name was Edward Blair and that he was 22 years old. Choice kept his head down and kept the telephones in front of his face while speaking to Braun.

{¶ 6}    Braun got the names and birth dates of the female passengers, as well as the driver's operator's license. Braun asked the driver who the man was in the rear right-side passenger seat. The driver stated that he was her brother. Braun then shined his flashlight on

Choice and asked whether Choice had any identification. Choice said he did not have any identification. Braun then asked him his age again, to which Choice responded that he was eighteen. At that point another officer, Daniel Perry, arrived on the scene. Braun believed that Choice was not being truthful, so he went to Choice's door and asked him to step out of the vehicle. Braun then took Choice to his cruiser and placed Choice inside. Braun then walked back to the rear passenger's door to speak with the occupants to see if they would tell him the male's proper identification. Upon shining his flashlight into the vehicle, he noticed the handle of a gun sticking out from under the seat in front of where Choice had been sitting. Braun took possession of the gun, which was loaded, and handed it to Officer Perry. Because the gun's hammer was also back and the gun was ready to fire, Perry "dropped" the magazine, emptied the firing chamber and locked the gun. Braun then reached into a pocket on the back of the front passenger seat and retrieved Choice's identification driver's license.

{¶ 7} After Choice's true identification and age were verified, he was arrested for Falsification. The two minors were cited for a curfew violation. No parking citation was issued for the driver.

## II. The Course of Proceedings

{¶ 8} Choice was indicted on one count of Improper Handling of a Firearm in a Motor Vehicle and one count of Having a Weapon Under a Disability. He moved to suppress evidence, contending that it was obtained as a result of an unlawful search and seizure. At the suppression hearing Choice argued that "since there was no illegal parking, the stop was not justified; therefore, the seizure was unconstitutional." The motion was overruled by the trial

court.

{¶ 9}    Following a jury trial, Choice was convicted of both charges.   He was sentenced to a total jail term of nine months.   He appeals from his conviction and sentence.

.

### III.   The Trial Court Did Not Abuse its Discretion in Overruling

### Choice's Challenges for Cause to Three Prospective Jurors

{¶ 10}   Choice's First Assignment of Error states:

THE      TRIAL      COURT      IMPROPERLY      OVERRULED      THE DEFENDANT'S CHALLENGES FOR CAUSE WITH RESPECT TO THREE POTENTIAL JURORS.

{¶ 11}   Choice contends that the trial court erred when it failed to remove three jurors for cause.   He was forced to use his peremptory challenges to remove those jurors, as a result of which he had fewer peremptory challenges available to him.   He used all of his peremptory challenges.

{¶ 12}   We begin with Choice's claim that the following colloquy between the prosecutor and Juror Number 2 indicates that the juror should have been removed for cause:

PROSECUTOR: If the Defendant takes the stand * * * are you going to give his testimony more weight than anybody else's?

JUROR NO. 2: No.

PROSECUTOR: Okay.   Why is that?   It's okay.   Be honest.

JUROR NO. 2: Well, he's going to try to make himself look innocent.

PROSECUTOR: Okay.

**{¶ 13}**   Choice contends that this shows the juror could not be fair and impartial. However, we note that the conversation continued as follows:

JUROR NO. 2: And if not, you know, I'd have to be open-minded and kind of get at his (indiscernible) also.

PROSECUTOR: Okay.   So you're willing to listen to both sides, keep an open mind, and use your common sense?   I mean I don't want to put words in your mouth.   I apologize.   But you're willing to review the evidence and be fair and impartial   –

JUROR NO. 2: Yes.

**{¶ 14}**   Choice next directs us to the following passages involving Juror Number 21:

PROSECUTOR: [Juror Number 21], and you've already heard the Judge about that this case involves a firearm.   And, obviously, as I've already said, I don't want to pry into people's personal lives, but given the fact that this is dealing with a firearm, what did you think when you heard that?

JUROR NO. 21: I'm not really crazy about guns. * * * They cause a lot of problems.

* * *

DEFENSE COUNSEL: You've got to be impartial.   And if you feel that way, you do.   I understanding [sic].   Thank you, sir.

[The Prosecutor] went into the question of it – there being a firearm involved and how that made each of you feel, and if you could still judge the case fairly and impartially.

[Juror Number 21] I think you had a pretty strong statement on that, correct? Because a gun is involved, do you think you can't be impartial in this case, or it's going to be difficult to be? You tell me.

JUROR NO. 21: It's going to be difficult

DEFENSE COUNSEL: Going to be difficult.

JUROR NO. 21: Yeah.

DEFENSE COUNSEL: Because of your personal feelings about firearms in general.

JUROR NO. 21: Right.

DEFENSE COUNSEL: Okay. Evidence is presented that a firearm is involved. Okay. Even if there's no indication that my client put his hand on the firearm, or used the firearm, or anything like that, if a firearm is involved - - and you know what? It is. It's got to be by the charges, improper handling of a firearm. I'm not telling you anything you haven't heard before. * * * Weapons under disability. It's the gun case. It's about a gun. So you're thinking you can't be impartial on this one?

JUROR NO. 21: You're correct.

DEFENSE COUNSEL: All right.

{¶ 15} Choice also directs us to the following passage in the transcript of the voir dire involving Juror Number 2 and Juror 7:

DEFENSE COUNSEL: Understanding that, you've got to hear evidence of a prior adjudication [with regard to the charge of Having Weapons Under a

Disability], and you would certainly hold that against him if you heard it, because it's an element of the offense. If you found beyond a reasonable doubt in that count, I understand. * * * But would that influence your judging of the other count, improper handling? Well, he's under a disability. He's got a record. You know, maybe he's more likely to be guilty because of that?

JUROR NO. 2: [No audible response].

DEFENSE COUNSEL: And you're saying no, you would be fair and impartial?

JUROR NO. 2: Uh-huh.

DEFENSE COUNSEL: Everybody hear that question? Anybody going to hold it against my client?

{¶ 16} At that point, a juror who was subsequently excused, stated that he would "hold it against" Choice. Defense counsel continued:

DEFENSE COUNSEL: It would cause you to think well, he's - - he - - probably more likely he did commit this crime. Okay, understood. Anybody else?

JUROR NO. 7: I would have the same feeling.

JUROR NO. 2: I would too.

DEFENSE COUNSEL: Please explain.

JUROR NO. 7: I just - - I mean if it's anything related to what he's in trouble for now, it just leads me to believe that he's guilty.

DEFENSE COUNSEL: If it's anything related.

JUROR NO. 7: I'm saying if it's related to a firearm or any kind of criminal activity.

DEFENSE COUNSEL: Any type of criminal activity?

JUROR NO. 7: You know, that he got in trouble for, because he didn't learn his lesson the first time.

JUROR NO. 2: I would have to agree, because he doesn't look like he's that old now.   Yeah, I'd have to agree with what he said.

DEFENSE COUNSEL: Understood.   Well, I mean this is an element of the offense, conviction, adjudication.   Adjudication is as a juvenile since you mentioned that.   You were talking about his age.   You're sitting before you know.   Obviously, he is a young man, but he is a man.   If he were adjudicated as a juvenile years ago, does that change your opinion of that?

JUROR NO. 2: I would have to be the age - - I mean years.

DEFENSE COUNSEL: A criminal offense but an adjudication nonetheless, that he was - - now they do it different in juvenile court.   It's not a conviction.   He's not guilty.   He's adjudicated delinquent by reason of his offense.   That's how they term it.   But it's obvious - everybody knows that juvenile standards and adult standard is a little bit different, different courts and all of that.   This is obviously adult court.   This man is an adult.   And if this was a number of years ago, several years ago, seven, eight, nine, 10 years, how would you feel then?

JUROR NO. 7: It depends on the circumstances.   I mean why, matter of

fact, yeah.

DEFENSE COUNSEL: Why. Okay. If you are to only hear the name of the offense, the name of the adjudication, the time it happened, that's it, no other facts come out.

JUROR NO. 2: It'd depend on how many years.

DEFENSE COUNSEL: Understood. Okay. You'd take that into account? I'm asking. That's what you would do, you would take that into account. But you would, in general, hold that against him in terms of judging this case?

JUROR NO. 2: In general, yes.

DEFENSE COUNSEL: And [Juror Number 7], does that change your thoughts on this at all?

JUROR NO. 7: As far as what?

DEFENSE COUNSEL: As far as the time it may have occurred. We're talking about a juvenile offense from many years ago.

JUROR NO. 7: I would have to say no.

DEFENSE COUNSEL: Would no. Okay, understood

JUROR NO. 7: If he got in trouble before, he didn't learn anything from his previous incident.

DEFENSE COUNSEL: Sounds like you'd be unable then to be fair and impartial.

JUROR NO. 7: I would have a difficult time, yes.

**{¶ 17}** Following the close of defense counsel's voir dire, the trial court made the following statement:

> TRIAL COURT: There is – when we initially started, I indicated some of the rules, and I asked you about those rules. And when I was doing that, I would acknowledge it might have been some of an academic cold type situation. And now, we've got some facts that you maybe could apply. So I want to ask again. This is a rule, and I don't want to emphasize this rule, necessarily, more than any other rule. But the rule is that the Defendant is presumed innocent unless and until the State has offered sufficient evidence to convince you beyond a reasonable doubt of the existence of each and every element of the offense charged. And when I said the Defendant, that means all Defendants. Defendants who have prior convictions are presumed innocent at this time. Defendants who are charged with weapons offenses are presumed innocent. Is there anyone here who feels they cannot accept and apply this rule of law? No one indicates they can't. All right. * * *

**{¶ 18}** In chambers, the trial court denied Choice's challenges to strike prospective jurors 2, 7 and 21 for cause. Choice's counsel then used all four of his peremptory challenges, three of which were used to excuse these particular jurors.

**{¶ 19}** "The Sixth Amendment to the United States Constitution guarantees a defendant the right to a trial by fair and impartial jurors. In order to protect this fundamental right, the court conducts voir dire with the purpose of empaneling a fair and impartial jury, free from prejudice or bias." (Citations omitted.) *State v. Oliver,* 11th Dist. Portage No.2010–P–17,

2012–Ohio–122, ¶ 37.   The decision whether to disqualify a juror for cause is a discretionary function of the trial court, and is not reversible on appeal absent an abuse of discretion. *Berk v. Matthews,* 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990), syllabus. The term "abuse of discretion" has been defined as a decision that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

**{¶ 20}**   Although the three challenged jurors indicated that they had some difficulties with being impartial in a case involving prior convictions or juvenile delinquency adjudications or the use of a gun, they all ultimately indicated to the trial court that they understood that Choice was to be presumed innocent nevertheless.   Under the circumstances, ascertaining the fairness of these three tentative jurors by a final en masse inquiry may have stretched acceptable discretion to its outer limits.   Although the issue is close, we conclude that the trial court did not abuse its discretion by overruling Choice's challenges to these three prospective jurors for cause.

**{¶ 21}**   The First Assignment of Error is overruled.

## IV.   The Trial Court Reasonably Concluded, After Interrogating Each Juror Individually, that No Juror had Been Prejudiced by a Remark Made by a Prospective Juror Near the End of Voir Dire

**{¶ 22}**   Choice asserts the following as his Second Assignment of Error:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL.

**{¶ 23}**   Choice contends that the trial court should have granted his motion for a mistrial, which was based upon a statement made by a member of the jury pool still seated in the gallery,

not in the jury box, during voir dire. During voir dire, the prosecutor had the following conversation with a prospective juror:

> PROSECUTOR: Are you still an active police officer?
>
> JUROR: Yes.
>
> PROSECUTOR: You're not retired. And what jurisdiction do you work for?
>
> JUROR: [Indiscernible] Township, Montgomery County, Ohio.
>
> PROSECUTOR: Okay. I don't think you and I have ever had a case together.
>
> JUROR: I'm sure we haven't.
>
> PROSECUTOR: Yeah, okay. But anything about, you know, being a police officer that's going to make it a little difficult to –
>
> JUROR: [Indiscernible] I think I've dealt with him in the past –
>
> PROSECUTOR: But kind of dealing with what we have here today, is it going to be difficult for you to be fair and impartial? We want you to be honest. It's okay. Whatever that answer –
>
> JUROR: [Indiscernible]
>
> PROSECUTOR: Okay. And that's a – I appreciate your honesty.

{¶ 24} Later, during defense counsel's questioning of the juror on his background, the prosecutor asked for a sidebar, during which the following colloquy took place outside the hearing of the jury:

> PROSECUTOR: * * * when I was questioning [the juror], and I don't

know if you heard it or not, this particular juror, he goes, "I think I might have dealt with this guy before."

THE COURT: Yeah, I know.

PROSECUTOR: And I quickly went past that.

THE COURT: Yeah.

PROSECUTOR: So I – the way –

DEFENSE COUNSEL: Is that what he said?   Where was I?

THE COURT: I think he meant Mr. Choice.

PROSECUTOR: Yeah.

DEFENSE COUNSEL: Oh.

PROSECUTOR: You did not notice it.

THE COURT: [Indiscernible].

DEFENSE COUNSEL: Did he say that?   I think I did hear him say that.

THE COURT: He did say that.

PROSECUTOR: But the reason is –

DEFENSE COUNSEL: Oh, my God.   I think I did hear that.

{¶ 25}  The conversation ended with the Court and the parties stipulating that the prospective juror would be excused for cause on the joint motion of the parties.   Thereafter, the jury was empaneled, and a recess was taken.   During the recess, the following conversation took place:

DEFENSE COUNSEL: Your Honor, I just wanted to bring to the Court's attention – I think we already discussed it kind of off the record and at sidebar.

But I have concerns about the comment made by a prospective juror behind the rail, [the police officer]. I think I heard what his line was that he – that was actually spoken on the record, but I'm not actually sure of it and haven't heard it myself. I do recall it being said. I didn't say where he was looking, and the camera doesn't show it either, but it's out there what he said and the jury may very well have heard it. I don't know. But until I actually hear it – and that's why I'm making the Court aware right now. This may rise to the level of a mistrial. I need to just see what I've got here, and then, you know, I'll make the motion after we can finish with this if the Court so desires.

THE COURT: Okay. You're not making the motion right now?

DEFENSE COUNSEL: Well, I just want to let the Court know that that's what I'd like to be able to do, but I don't know. I haven't had a chance to see it, you know. I can just make the motion now, and the Court can rule on it later. I guess it doesn't hurt one way or the other. If there isn't merit to it from what I actually hear, then the Court can overrule it, and there's no prejudice to my client one way or the other. So I'll just go ahead and make the motion.

THE PROSECUTOR: My concern, obviously, is any prejudice towards the State once a jury has been impaneled. I just want it to be on the record that the statement that the Butler Township Officer made, we discussed it prior to the impaneling of the jury. [Defense counsel], at that time, acknowledged that he, too, had heard that. There was no motion made at that time. And subsequent to that, the jury was impaneled. So I just want that to be very clear on the record, that the

knowledge of this statement was before the impaneling of the jury.

DEFENSE COUNSEL: And that said – quick response. There's no prejudice whatsoever. This is minutes ago. We came in, impaneled the jury, and broke. No evidence has been put on or anything. So, we'd be at the same point we were, you know, minutes ago. So that's my response to that. But again, you know, I'm just preserving it for the record. If I'm late on the motion and the Court overrules it for that reason, then we've got ineffective assistance in my humble opinion. But, you know, that's what I'm putting forth to the Court is that I've got to make it – the Court aware of it, because it may have very well tainted a jury that we just chose.

THE COURT: So noted. We'll take it under advisement.

{¶ 26} Thereafter, both sides presented opening statements and then the trial was recessed for the day. Upon resuming trial the following week, defense again raised the motion for a mistrial. The parties discussed the matter with the trial court in chambers and reviewed the audio transcript of the juror's statement. The State, again, opposed the motion. The trial court decided to question each juror individually regarding the potential impact of the statement. Thereafter each juror, including the two alternate jurors, were brought into chambers and questioned, without specific reference to the police officer prospective juror or his statement,[1] whether the juror had heard any statements by anyone in the jury pool that would render the juror unable to be fair and impartial. Following that, the trial court made the following finding:

---

[1] The trial court explained that it did not want to directly refer to the police officer prospective juror's statement, since to do so might itself prejudice the jury, which would not otherwise have been prejudiced. We understand and agree with this rationale for not directly referring to the statement during the inquiry. In any event, Choice did not object to this method of proceeding.

The Court has examined all the prospective jurors – not prospective jurors anymore. The jurors and the two alternates on the issue of possible prejudice from the statement that was made by Prospective Juror [police officer], that he had dealt with [Choice] in the past, or he thought he might have dealt with you in the past. And from what the jurors have indicated, no one has – well, no one specifically acknowledged they even heard it. They all indicated they did not hear anything from any prospective juror, as far as answers, statements, comments, that would cause them any difficulty in being fair and impartial in the case. No one raised [the officer's] answer, and all have indicated they're willing to abide by the rules, that they're going to decide the case on the evidence they hear from the witnesses during the next two to three days of trial. All have indicated that they're following the rule and would have no difficulty following the rule that the Defendant has a presumption of innocence, and that the State has the burden of proving each and every element of the offense beyond a reasonable doubt. So the Court is going to overrule any motion for mistrial on the basis of that one answer that [the officer] gave.

{¶ 27} Mistrials are only necessitated when justice requires and a fair trial is not possible. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). The decision whether to grant a mistrial lies within the trial court's sound discretion. *Id*. In order to demonstrate an abuse of that discretion, the defendant must show that the court's decision is arbitrary, unreasonable, or unconscionable. *State v. Nichols*, 85 Ohio App.3d 65, 69, 619 N.E.2d 80 (4th Dist.1993).

{¶ 28} This court has stated, in *State v. Patterson*, 188 Ohio App.3d 292, 302,

2010-Ohio-2012, 935 N.E.2d 439 (2d Dist.), at ¶ 70:

> Normally, in determining whether the trial court properly exercised its discretion, reviewing courts look to whether (1) "there [was] a 'manifest necessity' or a 'high degree' of necessity for ordering a mistrial, or (2) 'the ends of public justice would otherwise be defeated.' " *State v. Widner* (1981), 68 Ohio St.2d 188, 189-190, 22 O.O.3d 430, 429 N.E.2d 1065, quoting *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717. A "manifest necessity" for a mistrial does not mean that a mistrial was absolutely necessary or that there was no other alternative. *Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. 824, 54 L.Ed.2d 717. In order to exercise "sound discretion" in determining that a mistrial is necessary, the trial judge should allow the defense and prosecution to state their positions on the issue, consider their competing interests, and explore some reasonable alternatives before declaring a mistrial. *Id*. at 514-516, 98 S.Ct. 824, 54 L.Ed.2d 717.

{¶ 29} Choice contends that his situation is analogous to the facts in *State v. Patterson,supra*, wherein this court reversed the trial court's denial of a motion for mistrial. We disagree. In *Patterson* the jurors were provided an exhibit, during their deliberations, that had not been admitted at trial, and which all parties agreed should not have gone to the jury. *Id.* at ¶ 22. The exhibit consisted of a written statement made by a State's witness, who did not testify at trial, that indicated that the defendant had laughed about "hitting and killing" the victim in the case. *Id.* at ¶ 20. The trial court attempted to cure the mistake by speaking with each juror and informing them that the exhibit was not reliable and that they should disregard it despite the fact

that they had all seen and read it. *Id.* at ¶ 26. Nevertheless, we held that the trial court should have granted the defendant's motion for a mistrial, because the prejudicial effect of the exhibit was "clear and compelling." *Id.* at ¶ 80. The exhibit "tended to support a conclusion that [the defendant] possessed the [requisite] mens rea * * * [despite the fact that the State did not present] overwhelming evidence of the mens rea element of recklessness required for aggravated robbery and murder." *Id.* at ¶ 73.

{¶ 30} In the case before us, it is not clear that any of the jurors heard or recalled the statement made by the police officer. Indeed, the trial court reasonably concluded, from its inquiry, that no juror recalled the statement having been made. In *Patterson*, we noted that "when unadmitted evidence is mistakenly submitted to a jury, the error is harmless if it is repetitive or cumulative of other evidence introduced at trial." *Id.*, at ¶ 71, citing *State v. Locklin*, 2d Dist. Montgomery No. 21224, 2006-Ohio-3855. In the case before us, the police officer prospective juror may have remarked during voir dire that he thought he had dealt with Choice in the past. Given that the State was required to prove that Choice had a prior offense of violence as an element of the offense of Having Weapons Under a Disability, we conclude that the officer's statement could be viewed as merely cumulative of the State's evidence of the prior offense of violence, and harmless, in view of the fact that it would have been apparent to the jury, from the evidence of Choice's prior offense, that he had had an experience with a police officer in the past.

{¶ 31} The Second Assignment of Error is overruled.

## V. There Is Evidence in the Record to Support the Convictions

**{¶ 32}** Choice's Third Assignment of Error is as follows:

THE JURY'S VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE RULE 29 MOTION SHOULD HAVE BEEN GRANTED.

**{¶ 33}** Choice contends that the State failed to produce evidence sufficient to sustain the convictions, so that the trial court erred by overruling his Crim.R. 29 motion for acquittal. Specifically, he argues that the State failed to prove that he acted knowingly, and failed to prove that he had possession of the gun.

**{¶ 34}** When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard it uses in the review of a sufficiency-of-the-evidence claim. Both claims question "whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009–Ohio–525, ¶ 10, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing the trial court's denial of a Crim.R. 29(A) motion at the close of the State's case, we consider only the evidence then available to the trial court. *State v. Stoner,* 2d Dist. Clark No.2008 CA 83, 2009–Ohio–2073, ¶ 24. The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id* .

**{¶ 35}** Choice was convicted of Improper Handling of Firearms in a Motor Vehicle, in

violation of R.C. 2923.16. That statute provides, in pertinent part, that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 36} Choice is correct that there is no direct evidence that he had possession of the gun. However, constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). The State may prove constructive possession solely through circumstantial evidence. *State v. Barnett,* 2d Dist. Montgomery No. 19185, 2002–Ohio–4961. Circumstantial evidence does not have less probative value merely because it is circumstantial. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 37} In this case, the State presented evidence that a loaded, cocked gun was located on the vehicle floor, partially under the front passenger seat, directly in front of Choice. Officer Braun testified that Choice's feet would have been touching the gun while Choice was in the vehicle. There was also evidence that Choice's behavior when questioned by Braun was suspicious. There was evidence that Choice had time to place his driver's license in the pocket of the seat in front of him, from which the jury could also infer that he had time to place the gun on the floorboard. Finally, the State presented a recording of a phone call made by Choice to the driver of the vehicle, while Choice was lodged in the Montgomery County Jail. During that call,

the following exchange took place:

CHOICE: Tuesday at 9 o'clock, right?

BOYD: Uh-huh.

CHOICE: I want nobody to show up but you.

BOYD: Uh-huh.

CHOICE: And tell them, like shit, I was riding with my n* * * earlier. My n* * * had the car.   You just picked me up.   You feel me?

BOYD: Uh-huh.

CHOICE: And it ain't mine.   You ain't seen me with it or nothing.

BOYD: I can't hear you.   The phone is messing up.

CHOICE: You hear me?

BOYD: I told them that I had just picked you up, though.

CHOICE: Right, yeah.   It ain't mine.   Period point blank.

BOYD: I told them that I had just picked you up around the corner at Sunoco.

CHOICE: Make sure like when you come down here you tell them like, shit, dude was driving your car earlier.   You feel me?

BOYD: Uh-huh.

CHOICE: Before you even started driving, right.   And I got in the car. You ain't seen me with no gun or nothin'.   You feel me?

BOYD: [Unintelligible] Does that help at all, though?

CHOICE: Hell yeah.

**{¶ 38}** Although Choice's mere presence in the car where the gun was located is not conclusive evidence of constructive possession, it may be considered as some evidence of constructive possession. *State v. Priest*, 2d Dist. Montgomery No. 24225, 2011-Ohio-4694. The jury could also rely upon evidence of consciousness of guilt, in the form of Choice's behavior with Braun, and the telephone conversation between Choice and the driver, in finding that Choice had possession of the gun.

**{¶ 39}** Choice was also convicted of Having a Weapon While Under Disability, in violation of R.C. 2923.13(A)(2), which states that "[u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if  * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

**{¶ 40}** In addition to the evidence recited above, the State presented evidence that Choice had been adjudicated delinquent by reason of having committed an offense that, were he an adult, would have constituted Aggravated Robbery.

**{¶ 41}** Viewing the evidence in a light most favorable to the State, we conclude that there is evidence in the record sufficient to persuade a reasonable mind that Choice was guilty of Improper Handling of Firearms in a Motor Vehicle and Having Weapons While Under Disability.

**{¶ 42}** The Third Assignment of Error is overruled.

**VI. The Evidence Was Obtained as the Result of a Lawful Search and Seizure**

**{¶ 43}** Choice's Fourth Assignment of Error states as follows:

THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS.

**{¶ 44}** Choice contends that the trial court should have sustained his motion to suppress evidence obtained during the investigation of the occupants of the vehicle. Specifically, he argues that the officer did not observe any illegal activity, and that the officer improperly detained Choice based merely upon "a hunch that Mr. Choice was committing some act of wrongdoing."

**{¶ 45}** When ruling upon a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E .2d 321 (2d Dist.1996), quoting *State v. Venham,* 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005–Ohio–3733, citing *State v. Retherford,* 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

**{¶ 46}** Individuals are protected from unreasonable searches and seizures by the Fourth Amendment to the United States Constitution. *State v. Taylor,* 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995). This protection is not implicated in every situation where police

officers have contact with an individual. *Id.,* citing *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Consensual encounters occur when "the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747. The protections afforded by the Fourth Amendment are not implicated in consensual encounters unless "the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Id.* at 748. An officer's request to examine an individual's identification does not render an encounter nonconsensual. *Id.* at 747.

**{¶ 47}** The trial court found that Choice's initial encounter with Braun was consensual, not a traffic stop as argued by Choice. Even if there was a stop, Braun had a reasonable, articulable suspicion of a parking violation when he initially approached the parked vehicle. After talking with the two minors in the vehicle, Braun had a reasonable, articulable suspicion of a curfew violation, justifying further detention.

**{¶ 48}** During an investigative stop of a vehicle, the police officer making the stop may order a passenger to get out of the vehicle pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

**{¶ 49}** The Fourth Assignment of Error is overruled.

## VII. Conclusion

**{¶ 50}** All of Choice's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

FAIN, P.J., dissenting.

{¶ 51}  Although I agree with the opinion of this court in all other respects, I would sustain Choice's First Assignment of Error, reverse the judgment of the trial court, and remand this cause for a new trial.

{¶ 52}  I agree that the issue is close, but I conclude that the trial court erred in overruling the challenges for cause to prospective jurors number 7 and 21.

{¶ 53}  Prospective juror number 7 consistently indicated during voir dire by defense counsel that Choice's prior juvenile adjudication for a similar offense would weigh heavily on his mind, even if it was "from many years ago."  In response to defense counsel's concluding question: "Sounds like you'd be unable then to be fair and impartial," prospective juror number 7 responded affirmatively: "I would have a difficult time, yes."

{¶ 54}  Similarly, prospective juror number 21 consistently indicated during voir dire by defense counsel that he would have difficulty being fair and impartial, because the charged offense involved a firearm.  Defense counsel concluded his examination of this juror with:  "So you're thinking you can't be impartial on this one?"  Prospective juror number 21 responded: "You're correct."

{¶ 55}  Both prospective jurors expressed difficulty with remaining fair and impartial, and individually responded affirmatively to defense counsel's suggestion that the prospective juror would not be able to be fair and impartial.

**{¶ 56}** At the conclusion of the voir dire, the trial court instructed all the jurors that the presumption of innocence applies even to defendants with prior convictions, and even with defendants charged with weapons violations. The trial court then asked the venire, generally, whether there was anyone who felt they could not accept and apply that rule of law. The record reflects that no one responded.

**{¶ 57}** In my view, the trial court's general request for a show of hands, or some other individual response, to its question whether prospective jurors could follow its instruction, coupled with the lack of a response, was not sufficient to overcome the lack of the ability to be fair and impartial that prospective jurors number 7 and 21 had already indicated.

In arguing against the challenges for cause, the prosecutor remarked:

And I think, in this argument about whether or not they can be impartial, I think these people like * * * and * * * were questioned kind of near the beginning of when that questioning was going on. [Defense counsel] kind of started there. And as he worked down – and I think some of the other people further down in the jury box talked more about the presumption of innocence and how they wouldn't hold that against them.

* * *

And then you then asking them. I think maybe that dialogue between the other people is what led them to, you know, not raise their hand whenever you questioned them about that.

**{¶ 58}** It could be that prospective jurors number 7 and 21 conclusions about whether they could be fair and impartial changed as a result of hearing the responses of other prospective

jurors to similar questioning. I conclude that it is just as likely that prospective jurors number 7 and 21 realized, from the subsequent voir dire involving other prospective jurors, that their expressed inability to be fair and impartial was not politically correct, and they were too embarrassed to acknowledge that they were still unable to be fair and impartial.

{¶ 59} Had prospective jurors number 7 and 21's each been asked, individually, whether they could follow the trial court's instruction of law concerning the presumption of innocence, and had they responded affirmatively, then I would conclude that the trial court would have been within its discretion in determining that they could, in fact, be fair and impartial, despite their earlier misgivings. The point is that we cannot know, without there having been some individual inquiry, whether the trial court's instruction concerning the presumption of innocence dispelled these jurors' expressed inability to be fair and impartial.

{¶ 60} Although I agree that the issue is close, I conclude that, based on the record, the trial court acted outside the scope of its discretion by overruling the challenges for cause to prospective jurors number 7 and 21.

{¶ 61} I agree that the trial court was within its discretion in overruling the challenge for cause to prospective juror number 2. Although she expressed some concern about Choice's prior adjudication for juvenile delinquency, she never said that she could not be fair and impartial, and, at one point during defense counsel's questioning, asserted that she could be fair and impartial.

{¶ 62} Nevertheless, the error in overruling the challenges for cause to prospective jurors number 7 and 21 is enough to merit the reversal of the judgment and a remand for a new trial. Although these prospective jurors were excused from the jury, Choice had to use two of

his peremptory challenges to get them excused, and he used all four of his peremptory challenges. The result of the trial court's error left Choice effectively with only two peremptory challenges, when he should have had four.

**{¶ 63}** I agree with this court's disposition of Choice's other assignments of error.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Andrew T. French
Rebekah S. Neuherz
Hon. Timothy N. O'Connell